May it please the court. My name is Christina Holmstrom, and I'm here on behalf of Appellant Jaib Singh Ray. I'd like to reserve three minutes of time for rebuttal, please. Okay. It counts down, so. Yes. Thank you, Your Honor. Yeah. Mr. Ray seeks asylum. The BIA erred by finding Mr. Ray was not credible on three bases. None of the three bases constitute substantial evidence, so the adverse credibility determination of the BIA should be reversed. The most egregious error the BIA made was deferring to the I.J.'s observation of long hesitations in Mr. Ray's testimony. It's wrong for two reasons. Deference to the I.J. was unwarranted because the one long pause was adequately noted in the transcript. And beyond that, the law requires that the I.J. be much more specific when making demeanor-based findings. The I.J. merely noted that Ray, who was testifying about events that occurred long in the past and through a translator, hesitated. She did not point to a specific portion of the transcript or even refer to a specific subject about the matter, subject matter about which he hesitated. Secondly- Although it was pretty telling at the very end. The government lawyer asks him across examination about a date, and he basically says, if you give me long enough, I can think about it. Apparently, there was quite a long time because the government attorney finally said, okay, I'm done, without waiting for the answer. Well, and that is evident from the transcript, Your Honor. And that is exactly why the BIA should not have deferred to the I.J., because it is evident from the written record. And moreover, Mr. Ray, in 1998, was testifying about elections that occurred in 1991 and 92. And this Court has frequently recognized that it might be difficult for these asylum petitioners to recall dates that far back. May I ask- Go ahead. Go ahead, Judge. May I ask a question that really goes to the heart of my concern? I'm frankly up in the air on this credibility issue. You represent a sympathetic client who says that he was beat up twice. So I'm frankly up in the air, and I could go either way. But stepping back and looking at the forest for a moment, I note a July 1997 addendum to the report, to note that we were considering the state report, stated that life for Sikhs in Punjab was normal after the watershed elections of February 1997. There is no evidence that Sikhs or Sikh particularists face harassment, mistreatment, or persecution merely on the basis of their religion or political opinions. Individual Sikhs after that time may have been mistreated, but no more than our other Indians. My question is, and the concern I have is, why shouldn't I go for affirmance in light of the fact that it appears that this was an aberration during the 70s and 80s when there was even violent protest and a desire by the Sikhs majority in that area to establish a homeland. But that's over, and it's done. Why isn't that the forest here, and the likelihood of persecution is very much diminished now? Thank you, Your Honor. Yes, the 1997 country report on India does reflect that. However, the BIA nor the IJ even considered changed country conditions. The government hasn't argued it. We certainly haven't had a chance to rebut it. Moreover, according to, for instance, I'm going to butcher this, Kamalian V. Holder, it's not enough to show that country conditions have changed. The government must show affirmatively that country conditions have changed. I appreciate that, and I agree with that argument. But here's my concern. You know, we have credibility, especially over the latter beating. And, therefore, we have a major credibility issue over whether if he went back he would be persecuted. He says, of course, that his father has died, that his family is still persecuted, and that they would seek him if he went back. But I'm wondering if that's true anymore in light of these reports. In other words, there really is a credibility issue as to his statements that he would be persecuted and sought out if he went back. I think that that matter would need to be addressed first at the BIA level because it's just simply not anything that's been addressed in the record. It would be a new basis for an adverse credibility determination to say that this court doesn't believe him because of changed country conditions. And I think that that's something that needs to be addressed below. So if that is your concern, I believe the proper action would be to remand it. Let me ask you another question, which comes from a different view a little bit. It seems to me you're really giving the I.J. the business about him not saying a lot about hesitations for long periods of time. But that wasn't the only thing the I.J. said about demeanor. The I.J. also said it's troubling that the testimony seems memorized and rehearsed rather than spontaneous. He's unable to elaborate convincingly when probed for detailed answers. That isn't even appealed. Why is it that I should then not just deny the petition? Because, Your Honor, the BIA conducted a de novo review of the file, which means that this court's review is limited to what the BIA found. And the only demeanor-based adverse credibility determination that the BIA expressly adopted was the hesitations. Well, but that's because that's the only thing that was appealed to them. Again, you didn't appeal the right things. You only appealed one demeanor finding. Two demeanor findings seem unappealed, uncontradicted, undone. If you'd appealed the other findings, maybe they would have addressed them. But they only address what you appeal. Your Honor, are you saying that we didn't appeal that? You didn't appeal anything about the testimony seems memorized or rehearsed rather than spontaneous to them. You didn't appeal that it was unable to elaborate convincingly when probed for detailed answers. That didn't go to the BIA. I believe that was argued at the BIA. Well, I don't believe so. If you show me in the record where you appealed that to BIA, I'm glad to look at it. The BIA addressed the only thing that you have addressed us, and that's the hesitations. So why shouldn't I, based on our precedent, just say this is denied? It was already done at the IJ level, and nobody appealed but the other parts of the demeanor. Well, the other parts of the demeanor still aren't substantial evidence to support an adverse credibility finding. Well, that's a good thing to argue now when you're standing up in front of me. But why isn't that raised anyplace? Why don't I just say this is over? I apologize, Your Honor. I thought we had addressed that at the BIA level. I can happily provide you with a citation to the record when I get back up for rebuttal. Okay. But assuming that we did, the IJ's adverse credibility determinations based on demeanor were far too vague to be upheld. This Court has been very, very, the Court has very clearly held that when you're making demeanor-based findings, they have to be related to some specific testimony or some specific part of the transcript. And here it's a very vague statement that the IJ made. It therefore can't constitute substantial evidence. Let me ask you this, and don't worry about the time running. If we use up all your time, that's on us, and we'll give you a chance to rebut. On the substance of his testimony, one of the things that he testified to was that he was in a group up toward the front, raising, as he called, raising slogans or protesting, saying, free Khalistan. He was then taken out individually on the sort of ostensible false ground, the president wants to see you. He goes out and finds, he says, a van waiting for him. He alone is taken out, as far as he can tell, and he alone, and he's clearly going to be an accurate observer on this, is put into the police van. And the IJ says, that just doesn't make any sense to me, given that he's not a leader. He might have been up toward the front. And the protest, by his own statement, has probably 200, 250, maybe many more. He says, I can't tell, but that's kind of the minimum size. And it just doesn't sound like a plausible story at all. I have to say, it doesn't sound like a plausible story to me either. How do you respond? I disagree about the plausibility, but I would like to address first that an IJ is not permitted to use speculation or conjecture to discredit a petitioner like Mr. Wray. It might not seem plausible to the IJ, but that's not a basis for finding against him. Well, in a sense it is, and in a sense it isn't. I mean, if he says the moon is made of green cheese, the IJ is permitted to say, you know, that doesn't seem plausible to me. So the question is, how plausible is it? Because the IJ is entitled to say, that just doesn't make any sense. The IJ is entitled to say that when there are inconsistencies, when a story is so flagrantly unbelievable that it can't be possible, such as the moon being made of green cheese, that could be actually scientifically proven wrong. But my colleague's question is pretty good, because Don V. Gonzalez, a 2007 case, suggests that the petitioner said he feared persecution by the police, but the petitioner had relatives in the police department, he had reported threats to the police, and he had repeated interactions to the police. And so the IJ said, that's implausible, and I'm not believing it, and we affirmed, we're in the same boat. Here's a guy who says, I went down, I had 200 people helping me out, I was the only one arrested, even the president wasn't arrested. Mr. Wray didn't say he was the only one arrested. He said he was the only one he was aware of. And he wasn't just one of the 250 participants. He was conspicuously leading the chants. He'd also transported a number of people to the protest. Also, Mr. Wray testified that all the leaders of his party were up on stage in front of the crowd. It would have been difficult to usher them off to the side gate to be arrested in the manner that Mr. Wray was. His story is plausible. And going back to the case that you cited, too, in that case there were concrete facts that the court was able to look to, such as a history of interaction with the police, that were inconsistent with that petitioner. And it is not concrete facts here? Is that what you're saying? I'm saying the concrete facts don't make the story implausible. I see. Okay. Why don't we hear from the government, and we will give you a minute to respond. Thank you, Your Honor. Good morning. May it please the Court, I'm Paul Fiorina for the Respondent. Judge Smith, we would agree with you that to the extent that the petitioner hasn't exhausted their appeal of the immigration judge's adverse credibility finding affirmed by the board, that they have failed to exhaust those issues. No, wait a minute. Let me understand this argument. If someone appeals from the IJ and says the IJ entered an adverse credibility finding, I'm appealing an adverse credibility finding, do you waive every argument relevant to the adverse credibility finding by not making every argument? Because the issue of their adverse credibility is clearly raised. I mean, that's the appeal. And if you don't make every little tiny argument, as soon as I don't make it, that's gone? I don't think that's the law. Well, the problem with this case, Your Honor, is that the adverse credibility finding consists of three bases, any of which would be sufficient to affirm an adverse credibility finding. So in order to reverse the board's decision, in order to find that the court would be compelled that the board's decision is wrong, you would have to attack each and every aspect of those adverse credibility findings, because only one of them would be sufficient to affirm the board's decision. But how about the one that we're focusing on here, where apparently it was raised in front of the BIA about pauses, but was not raised in front of the IJ about rehearsed. And you're saying because they didn't say rehearsed that that's gone? We can't look at it? Well, the board did say that it affirmed the IJ's decision and noted that the IJ made a decision based on demeanor. Yeah, and demeanor, I mean, that's kind of a broad term. Well, when the IJ discussed demeanor and the board affirmed it, the IJ said, here's what I find wrong with his demeanor. His testimony appears troubling, which is an intangible thing. It's seen rehearsed, and there are long pauses. Yeah. And the long pauses, they are on the record. The immigration judge specifically said. No, but I'm after a slightly different point. It's almost a legal point rather than addressed at the particular case, and that is if demeanor is raised and they don't specifically say as part of the argument about demeanor seems rehearsed, that argument's not available to us? I would say that you've got to be careful because the government doesn't always raise the arguments either. That's true, Your Honor. That's true. Well, and frankly, the questions asked here are not because there's an obvious answer. It is because we have a lot of case law on both sides. Yes, that is true. And so, therefore, I was putting the question to her, and I was going to put the same question to you, but my good colleague stole it away from me. I mean, it doesn't bother me because I frankly argued with his mother about this same point. So I can see this coming. All I'm trying to suggest is that this is a matter which I think has some impetus, and I'm trying to figure out what her decision was, and now I'm glad to hear what the government has to say about that. Well, to that we would say that. I can't argue with my mother. Well, our answer to this conundrum is that to the extent that the I.J. mentioned demeanor and the Board affirmed it and that the I.J.'s demeanor consists of several things, we would say that they would have to address each aspect of the I.J.'s findings because any one of them would be sufficient to affirm the Board.  Going on to that very point, there are three bases. Demeanor is only one of them. The other one is the contradiction in his testimony about the stitches in his chin, and the other one is the implausibility, which Judge Smith and Your Honor was talking about. Any one of those would be sufficient to affirm the Board, and none of the petitioner's arguments against the immigration judge are persuasive. Let me ask you this about the stitches. He clearly contradicts himself, assuming the translation is right, which I am willing to assume. But this is a pre-real I.D. case, so it has to go to the heart of the claim. Absolutely. So why does the question as to whether or not he had stitches when he woke up or whether he had stitches later go to the heart of the claim? Under either version, he had a cut in his chin that required stitches. Because whether or not he had a cut in his chin is not the point. Either one would be sufficient on the merits to constitute persecution. The issue is credibility. Is he telling the truth? Well, but under our pre-real I.D. cases, he can contradict himself on a matter that doesn't go to the heart of the claim, and we don't hold that contradiction against him. But it absolutely does go to the heart of his claim. It deals with a beating, which is the basis for his persecution claim. But his argument can be, well, under either version, I got a cut that was bad enough that required stitches. The only issue, the only contradiction is when I got them. No, you disagree. We're talking about credibility. Is he telling the truth? Well, I understand that. And under our pre-I.D. I'm not sure I agree with that case law that we had, that is he telling the truth doesn't matter if he's mistaken or lying about something that doesn't go to the heart of the claim. I mean, we all know the jury instruction in an ordinary case that if the jury finds that somebody lies about one thing, it's perfectly entitled to conclude that he's lying about something else. So, I mean, our law on that point is odd. It is. But we would still stand on a position that the beating is an incident of persecution and it goes to the heart of the claim. It is true that whether he had stitches when he woke up in the prison cell or whether he got stitches later is irrelevant to the merits of his claim. The heart of the claim certainly is whether or not he would be persecuted when he went back, if he went back. And the critical areas that we really can't explore credibility on are the death of his father, the subsequent contacts with his family, whether or not the police are still looking for him if he came back. So does not the stitches issue address believability on those other areas that we really can't test his stories on? Does it go to the heart of the claim or not? I think it does go to the heart of the claim because, Your Honor, we're looking at past persecution here. Whether or not he would be persecuted in the future is a consideration. He says he will be. He says he will be, but we don't, the court can't even get to that because he hasn't shown that he's been persecuted in the past. He's not entitled to a presumption of future persecution, and we would submit that the evidence doesn't compel it, including that he would independently show that he would be persecuted in the future. Do you agree with counsel that if that's an important issue, the quote-unquote forest, that he would not be persecuted in the future because this is not an area of violence anymore or persecution, that that would have to go back down for an additional ground or finding? Or can we take the credibility findings related, maybe related, to the core issue and simply make a final ruling? Would it have to go back down, as counsel argues? I think it would, Your Honor. That would be an aspect of fact finding that neither the IJ nor the board have touched on. So we can't say we affirm because the judge decided that the background. We can say, I guess, that we affirm because the judge decided there was no basis to believe him on past persecution, whether or not we address what I call the core issue, the future persecution. Absolutely. And, again, the immigration judge and the board found that he hadn't shown past persecution, not because what happened to him didn't rise to the level of persecution, nor did they find that he hadn't shown a nexus between the harm and a protected ground. He didn't get out the door. He didn't show that he was credible. He didn't show that his claim bears scrutiny. And so the standard of review for this panel to focus on is whether the board's decision is so wrong that the panel would be compelled to find that he is credible. And we would submit, based on the three bases, any one of which cited by the board in support of the adverse credibility finding, the record, substantial evidence of the record would support the board's decision. Here's a question to which I don't know the answer. Assume for the moment that we reverse the adverse credibility finding and we grant, as I think we have to, a ventura remand. The original proceeding in front of the I.J. was a long time ago. On a remand, would the government be permitted at that point to introduce changed country conditions as an argument, changed country conditions now rather than changed country conditions at the time of the original I.J. hearing? I believe so. I believe that it would be opened up because things may have changed since then. Well, they clearly have. Yes, they clearly have. But, again, that is assuming that the court would reverse the adverse credibility finding. I understand. That may be a professor's question rather than a ‑‑ okay. I got it. Yes, Your Honor. Three, two. This, subject to the court's further questions, we would like to conclude our argument, and we ask the court to affirm the board's decision and deny the petition. Thank you. Thank you, Your Honor. Would you like a minute for response? First, I promised Judge Smith a citation to the record where we briefed the entirety of the demeanor findings, and that would be found at the record on pages 55 through 57. All right. I'll look at that. Thank you. Our BIA brief after the BIA determined that Mr. Ray had received ineffective assistance of counsel. Secondly, I did want to get to the point about the stitches in Mr. Ray's chin going to the heart of his claim. And you had it right, Your Honor. It's a minor inconsistency at best, and he doesn't even ‑‑ he's not even inconsistent about whether his chin was cut. He's inconsistent, assuming you believe the transcript is correct, which we clearly do not, about when he received the stitches. He was utterly consistent about the key facts of his beating, the sequence of his arrest. He was very specific about the number and identity of the people holding him, on what parts of his body they touched him before he lost consciousness. You know, he testified that they grabbed the back of his hair, that one policeman was on each side of his leg, pulling his legs apart. They beat him with different objects during his different arrests. He was very specific with regard to all of the key facts, and he was consistent. Accordingly, even if the transcript is correctly transcribed, assuming Mr. Ray misspoke, it's not enough to support an adverse credibility determination. Okay. Thank you very much. Before you sit down, I'd like to ask you, I think you and your firm are taking this as part of the pro bono project, is that right? That's correct, Your Honor. On behalf of this panel and behalf of the court, I would like to thank you and your firm for doing this. These cases are very difficult, and you've done a wonderful job, both in your briefing and in your oral argument today. So win or lose, we want to thank you for the good work that you've done. Thank you, Your Honor. Okay. The case of Ray v. Holder is submitted.
judges: Jones, Fletcher W. , Smith N. R.